I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY Petitioner
FIRST CLASS MAIL POSTAGE PREPAID, TO ~~ALL COUNSEL~~
~~(OR PARTIES)~~ AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 8-28-12

DEPUTY CLERK

O



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY BARNES, | Case No. CV 12-2076-JPR |
| Petitioner, | |
| vs. | MEMORANDUM OPINION AND ORDER DENYING PETITION AND DISMISSING ACTION WITH PREJUDICE |
| TERRI GONZALES, Warden, | |
| Respondent. | |

## PROCEEDINGS

On March 12, 2012, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, raising four claims for relief. On May 14, 2012, Respondent filed an Answer with an attached memorandum. Petitioner did not file a reply. The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons discussed below, the Court denies the Petition and dismisses this action with prejudice.

## BACKGROUND

1 | burglary, in violation of California Penal Code section 459, and
2 | forgery, in violation of section 476.  (Lodgment 12, 1 Clerk's
3 | Tr. at 43-44.)  The trial court sentenced Petitioner to four
4 | years in prison.  (Id. at 152-57.)

5 | Petitioner appealed, raising claims corresponding to claims one through three and subclaim (A) of claim four in the Petition. (Lodgment 1.)  On May 19, 2011, the court of appeal affirmed his convictions and sentence.  (Lodgment 4.)  Petitioner then filed a Petition for Review in the state supreme court, which that court summarily denied on August 31, 2011.  (Lodgments 5, 6.)

While his direct appeal was pending in the court of appeal, Petitioner filed a habeas petition in the same court, raising subclaim (B) of claim four.  (Lodgment 7.)  On May 19, 2011, the court of appeal denied the petition in a reasoned decision. (Lodgment 8.)  Petitioner raised the same claim in a habeas petition in the state supreme court, which summarily denied it on August 31, 2011.  (Lodgments 9, 10.)

## PETITIONER'S CLAIMS

I.  The trial court violated due process and Petitioner's constitutional right to confront witnesses by admitting into evidence a purportedly fake invoice given by defense counsel to the prosecutor before trial.  (Pet. at 5.)

II.  The trial court violated due process by denying Petitioner's motion to reopen the proceedings at the end of trial to allow him to testify.  (Id.)

III. The prosecutor committed misconduct by commenting in closing argument on Petitioner's failure to testify, in violation of Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed.

2

2d 106 (1965). (Pet. at 5-6.)

   IV. Trial counsel was constitutionally ineffective for failing to (A) object to the alleged <u>Griffin</u> error or (B) authenticate the fake invoice given to her by Petitioner, which was subsequently admitted at trial to inculpate him. (<u>Id.</u> at 6.)

### SUMMARY OF THE EVIDENCE

   The factual summary set forth in a state appellate court opinion is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009). Because Petitioner does not challenge the sufficiency of the evidence, the Court adopts the following statement of facts from the California Court of Appeal opinion on direct appeal as a fair and accurate summary of the evidence presented at trial.[1]

> On July 23, 2008, [Petitioner] entered a bank in Lancaster, handed the teller a check, and asked to have it cashed. The check proffered by [Petitioner] is drawn on the account of a concrete manufacturer called Robertson's. The check is not genuine: it lacks security features, such as a border, colored background, invisible fibers, and a special type font. Robertson's never issued checks that look like the one that [Petitioner] sought to negotiate, and [Petitioner]'s check bore a serial number that was not used by Robertson's.
>
> When [Petitioner] handed over the check, the bank

---

[1] The Court has nonetheless independently reviewed the state-court record.

3

teller became suspicious because the texture of the paper and the ink looked like something printed on a home computer. (The teller received training from the bank to help him identify fraudulent checks.) [Petitioner] did not have an account at the bank, so the teller asked for identification and placed imprints of [Petitioner]'s finger on the check. When the check was run through a computerized processing system, it generated an alert. The teller directed [Petitioner] to wait in the lobby while he verified the transaction with a supervisor.

While [Petitioner] waited, a bank manager investigated the veracity of [Petitioner]'s check. He located photocopies of Robertson's genuine checks, and saw that the characteristics of those checks are entirely different from the one presented by [Petitioner]. He telephoned Robertson's to confirm that the check was fraudulent, then contacted the bank's corporate security department and the sheriff's department. He noticed that [Petitioner] was fidgety and looked around nervously. After a while, [Petitioner] departed the bank without a word, leaving behind his identification and the check.

Two hours later, [Petitioner] reappeared at the bank, approached the teller window, and asked for the return of the check and his identification. The bank manager — who by then knew that the check was fraudulent — tried to stall [Petitioner] until the sheriff's department arrived, and asked [Petitioner] why he had the check. [Petitioner], who still seemed nervous, described

4

it as a payroll check and said that he had to leave for an appointment. When the manager refused to return the identification or the check, [Petitioner] turned around and left. [Petitioner] did not seem surprised or shocked that the bank refused to cash the check.

After [Petitioner] departed (for the second time), a customer turned in a wallet that was left on the counter at the bank. The wallet contained an ATM card bearing [Petitioner]'s name, and a business card from the California Department of Corrections. [Petitioner] did not return to the bank to claim his wallet, his identification, or the check. The person listed on the CDC card was [Petitioner]'s parole officer.

The deputy sheriff assigned to the case has special training to detect check fraud. He testified that it is relatively simple to produce the kind of check that [Petitioner] attempted to negotiate. The check stock and check-writing software can be purchased at a business supply store or online. The deputy confirmed with Robertson's that the check tendered by [Petitioner] is fraudulent. Based on the deputy's experience, he believes that the check was produced on a home computer, although the identity of its creator is unknown.

The parties stipulated that [Petitioner] sent a letter to the court, and it was read to the jury. It states, "My family is really suffering due to a bad check that was issued to me for my labor, and I had no idea it was bad. I actually furnished the bank with my

> California identification card, three fingerprints, and waited for over a half an hour. So that, in itself, should prove I had no knowledge whatsoever whether the check was genuine or not."

(Lodgment 4 at 2-3 (footnote omitted).)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under AEDPA, the "clearly established Federal law" that controls federal habeas review of state-court decisions consists of holdings of Supreme Court cases "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

Although a particular state-court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. Id. at 391, 413. A state-court decision is "contrary to" clearly

established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). A state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id.

State-court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts' (emphasis added)." Id. at 11. A state-court decision that correctly identifies the governing legal rule may be rejected if it unreasonably applies the rule to the facts of a particular case. Williams, 529 U.S. at 406-08. To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court law is "objectively unreasonable." Id. at 409-10. In other words, habeas relief is warranted only if the state court's ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).

Here, Petitioner raised claims one through three and subclaim (A) of claim four on direct appeal, and he raised subclaim (B) of claim four on habeas review (Lodgments 1, 7); the