O

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RODNEY BARNES,                    ) Case No. CV 12-2076-JPR
                                  )
              Petitioner,         ) AMENDED*
                                  ) MEMORANDUM OPINION AND ORDER
        vs.                       ) DENYING PETITION AND DISMISSING
                                  ) ACTION WITH PREJUDICE
TERRI GONZALES, Warden,           )
                                  )
              Respondent.         )
_____   )

### PROCEEDINGS

On March 12, 2012, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, raising four claims for relief.  On May 14, 2012, Respondent filed an Answer with an attached memorandum. Petitioner did not file a reply.  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons discussed below, the Court denies the Petition and dismisses this action with prejudice.

### BACKGROUND

On November 5, 2009, Petitioner was convicted by a Los Angeles County Superior Court jury of second-degree commercial

1

* Document is amended to add missing sentence inadvertently left out of the "Background" section.

burglary, in violation of California Penal Code section 459, and forgery, in violation of section 476. (Lodgment 12, 1 Clerk's Tr. at 43-44.) The trial court sentenced Petitioner to four years in prison. (Id. at 152-57.)

Petitioner appealed, raising claims corresponding to claims one through three and subclaim (A) of claim four in the Petition. (Lodgment 1.) On May 19, 2011, the court of appeal affirmed his convictions and sentence. (Lodgment 4.) Petitioner then filed a Petition for Review in the state supreme court, which that court summarily denied on August 31, 2011. (Lodgments 5, 6.)

While his direct appeal was pending in the court of appeal, Petitioner filed a habeas petition in the same court, raising subclaim (B) of claim four. (Lodgment 7.) On May 19, 2011, the court of appeal denied the petition in a reasoned decision. (Lodgment 8.) Petitioner raised the same claim in a habeas petition in the state supreme court, which summarily denied it on August 31, 2011. (Lodgments 9, 10.)

<strong>PETITIONER'S CLAIMS</strong>

I.   The trial court violated due process and Petitioner's constitutional right to confront witnesses by admitting into evidence a purportedly fake invoice given by defense counsel to the prosecutor before trial. (Pet. at 5.)

II.   The trial court violated due process by denying Petitioner's motion to reopen the proceedings at the end of trial to allow him to testify. (Id.)

III. The prosecutor committed misconduct by commenting in closing argument on Petitioner's failure to testify, in violation of Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed.

2

1    2d 106 (1965).  (Pet. at 5-6.)

2        IV.  Trial counsel was constitutionally ineffective for

3    failing to (A) object to the alleged <u>Griffin</u> error or (B)

4    authenticate the fake invoice given to her by Petitioner, which

5    was subsequently admitted at trial to inculpate him.  (<u>Id.</u> at 6.)

6                      **SUMMARY OF THE EVIDENCE**

7        The factual summary set forth in a state appellate court

8    opinion is entitled to a presumption of correctness pursuant to

9    28 U.S.C. § 2254(e)(1).  <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029,

10   1031 n.1 (9th Cir. 2009).  Because Petitioner does not challenge

11   the sufficiency of the evidence, the Court adopts the following

12   statement of facts from the California Court of Appeal opinion on

13   direct appeal as a fair and accurate summary of the evidence

14   presented at trial.[1]

15           On July 23, 2008, [Petitioner] entered a bank in

16       Lancaster, handed the teller a check, and asked to have

17       it cashed.  The check proffered by [Petitioner] is drawn

18       on the account of a concrete manufacturer called

19       Robertson's.  The check is not genuine: it lacks security

20       features, such as a border, colored background, invisible

21       fibers, and a special type font.  Robertson's never

22       issued checks that look like the one that [Petitioner]

23       sought to negotiate, and [Petitioner]'s check bore a

24       serial number that was not used by Robertson's.

25           When [Petitioner] handed over the check, the bank

26

27   _____

28       [1]   The Court has nonetheless independently reviewed the
     state-court record.

                                    3

teller became suspicious because the texture of the paper and the ink looked like something printed on a home computer. (The teller received training from the bank to help him identify fraudulent checks.) [Petitioner] did not have an account at the bank, so the teller asked for identification and placed imprints of [Petitioner]'s finger on the check. When the check was run through a computerized processing system, it generated an alert. The teller directed [Petitioner] to wait in the lobby while he verified the transaction with a supervisor.

While [Petitioner] waited, a bank manager investigated the veracity of [Petitioner]'s check. He located photocopies of Robertson's genuine checks, and saw that the characteristics of those checks are entirely different from the one presented by [Petitioner]. He telephoned Robertson's to confirm that the check was fraudulent, then contacted the bank's corporate security department and the sheriff's department. He noticed that [Petitioner] was fidgety and looked around nervously. After a while, [Petitioner] departed the bank without a word, leaving behind his identification and the check.

Two hours later, [Petitioner] reappeared at the bank, approached the teller window, and asked for the return of the check and his identification. The bank manager — who by then knew that the check was fraudulent — tried to stall [Petitioner] until the sheriff's department arrived, and asked [Petitioner] why he had the check. [Petitioner], who still seemed nervous, described

4

it as a payroll check and said that he had to leave for an appointment.  When the manager refused to return the identification or the check, [Petitioner] turned around and left.  [Petitioner] did not seem surprised or shocked that the bank refused to cash the check.

After [Petitioner] departed (for the second time), a customer turned in a wallet that was left on the counter at the bank.  The wallet contained an ATM card bearing [Petitioner]'s name, and a business card from the California Department of Corrections.  [Petitioner] did not return to the bank to claim his wallet, his identification, or the check.  The person listed on the CDC card was [Petitioner]'s parole officer.

The deputy sheriff assigned to the case has special training to detect check fraud.  He testified that it is relatively simple to produce the kind of check that [Petitioner] attempted to negotiate.  The check stock and check-writing software can be purchased at a business supply store or online.  The deputy confirmed with Robertson's that the check tendered by [Petitioner] is fraudulent.  Based on the deputy's experience, he believes that the check was produced on a home computer, although the identity of its creator is unknown.

The parties stipulated that [Petitioner] sent a letter to the court, and it was read to the jury.  It states, "My family is really suffering due to a bad check that was issued to me for my labor, and I had no idea it was bad.  I actually furnished the bank with my

California identification card, three fingerprints, and waited for over a half an hour. So that, in itself, should prove I had no knowledge whatsoever whether the check was genuine or not."

(Lodgment 4 at 2-3 (footnote omitted).)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under AEDPA, the "clearly established Federal law" that controls federal habeas review of state-court decisions consists of holdings of Supreme Court cases "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

Although a particular state-court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. Id. at 391, 413. A state-court decision is "contrary to" clearly

6

established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  A state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Id.

State-court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts' (emphasis added)."  Id. at 11.  A state-court decision that correctly identifies the governing legal rule may be rejected if it unreasonably applies the rule to the facts of a particular case.  Williams, 529 U.S. at 406-08. To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court law is "objectively unreasonable."  Id. at 409-10.  In other words, habeas relief is warranted only if the state court's ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).

Here, Petitioner raised claims one through three and subclaim (A) of claim four on direct appeal, and he raised subclaim (B) of claim four on habeas review (Lodgments 1, 7); the

7

1  court of appeal rejected all of those claims in reasoned

2  decisions issued on May 19, 2011 (Lodgments 4, 8), except that it

3  did not address Petitioner's Confrontation Clause argument in

4  claim one (Lodgment 1 at 19; Lodgment 5 at 15).  Subsequently,

5  the California Supreme Court summarily denied his Petition for

6  Review and habeas petition.  (Lodgments 5, 6, 9, 10.)  Thus, the

7  Court "looks through" the state supreme court's silent denials to

8  the last reasoned decisions as the bases for the state court's

9  judgment.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.

10  Ct. 2590, 2595, 115 L. Ed. 2d 706 (1991) (holding that California

11  Supreme Court, by its silent denial of petition for review,

12  presumably did not intend to change court of appeal's analysis);

13  Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005)

14  (applying look-through doctrine to state habeas petitions).  The

15  Court reviews Petitioner's claims that were adjudicated by the

16  state courts under the deferential AEDPA standard of review.  See

17  Richter, 131 S. Ct. at 784.  The Court reviews the Confrontation

18  Clause subclaim in claim one de novo because it was not addressed

19  by the state courts even though Petitioner presented it to them

20  (see Lodgment 1 at 19; Lodgment 5 at 15).  See Cone v. Bell, 556

21  U.S. 449, 472, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009).

**DISCUSSION**

**I.   Habeas relief is not warranted on Petitioner's evidentiary
claim**

25       Petitioner contends that the trial court violated his

26  constitutional rights to due process and to confront witnesses by

27  admitting a purportedly fake invoice given by defense counsel to

28  the prosecutor before trial.  (Pet. at 5.)

A.   <u>Background</u>

The Court has independently verified and accordingly adopts the court of appeal's factual summary regarding Petitioner's evidentiary claim:

> After the preliminary hearing in this matter, defense counsel handed a document marked "invoice" to the prosecutor, Rachel Bowers.[FN2]  Bowers did not recall the exact words spoken by defense counsel; however, she testified at trial that the invoice was presented to her as "a receipt that was given to the defendant for services rendered."  The invoice contains Robertson's handwritten name at the top; indicates that four bedrooms were painted at an address on East Lancaster Blvd.; and the service was "sold by" [Petitioner].  Upon investigation, the address proved to be a home theatre/auto audio business known as California Sound Works, which does not have bedrooms and has not painted its premises in the last six years.  Robertson's does not operate in Lancaster, and its business is concrete production, not house painting.
>
> [FN2]    A different prosecutor handled the trial.
>
> At trial, [Petitioner] sought to have the invoice excluded from evidence, ostensibly because any testimony from Bowers about the provenance of the invoice was hearsay.  The prosecution contended that the invoice was relevant to prove [Petitioner]'s guilty state of mind because the invoice was — like the check [Petitioner] tried to negotiate — fake.    [Petitioner]'s counsel

9

1    conceded that she gave Bowers the invoice, saying that it

2    was a receipt for work performed by [Petitioner].

3    (Lodgment 4 at 4.)   The trial court denied Petitioner's motion to

4    exclude the invoice, finding that if the prosecutor could

5    properly "lay the foundation" while questioning Bowers, the

6    invoice would be admissible as an admission by a party opponent.

7    (Lodgment 11, 2 Rep.'s Tr. at 606-07.)

8        The court of appeal rejected Petitioner's claim:

9            [Petitioner] now argues that no foundation was laid

10           for  admission  of  the  invoice,  reasoning  that  "it  is

11           unknown when the invoice was created, who authored the

12           document,  the  intent  of  the  author  at  the  time  the

13           document  was  drafted,  or  whether  the  document  was  for

14           services rendered in this case or some other job on some

15           other date."  [Petitioner]'s argument is misplaced.  The

16           invoice  was  not  admitted  as  true  documentation  of  an

17           actual  transaction  to  paint  four  bedrooms.   Rather,  it

18           was  admitted  to  show  [Petitioner]'s  consciousness  of

19           guilt:  the  invoice  was  fabricated  to  exonerate

20           [Petitioner] of the criminal charges, to convince the

21           prosecutor  that  [Petitioner]  painted  a  house  and

22           legitimately  received  the  check  from  Robertson's  as

23           remuneration for his services.  (See People v. Alexander

24           (2010) 49 Cal. 4th 846, 921 [fabrication of exculpatory

25           evidence shows consciousness of guilt].)  Because the

26           prosecution  was  not  trying  to  prove  that  this  was  a

27           genuine invoice, no authentication was required.

28               A   reasonable   inference   can   be   drawn   that

                                      10

[Petitioner] supplied the invoice to his attorney, who passed it on to Prosecutor Bowers.  Defense counsel admitted as much to the trial court.  Presumably, [Petitioner] knew who created the document, when it was created, his intent, and whether it reflected services rendered.  Bowers could relate how she came into possession of the invoice, which the jury was free to believe or disbelieve.  Bowers's recollection was bolstered by a letter [Petitioner] sent to the court, indicating that "a bad check [] was issued to me for my labor," which goes hand in hand with the invoice he supplied.  No testimony from a work supervisor or employer vouched that [Petitioner] earned the check with his labor.  There was no error in admitting the invoice to show [Petitioner]'s consciousness of guilt.

Even if the invoice was improperly admitted, the error was harmless.  There was abundant evidence of guilt.  [Petitioner] presented a check that appeared to be made on a home computer, with none of the security features used by commercial enterprises.  The check proved to be fraudulent.  During the bank's investigation, [Petitioner] was fidgety and looking around nervously.  He slipped out without warning, leaving his identification and a check.  When [Petitioner] reappeared two hours later, he was still nervous, but did not seem surprised or shocked that the bank manager refused to cash the check.  An innocent person would be stunned to learn that a payroll check was

11

fraudulent and would be eager to explain the circumstances, rectify the error, and ensure payment. Instead, [Petitioner] turned on his heel, and abandoned his identification, his wallet, and the check at the bank, without explanation.  [Petitioner] would have been convicted even without the invoice.

(Lodgment 4 at 5-6.)

B.  Due Process[2]

A federal habeas court does not review "questions of state evidence law." Spivey v. Rocha, 194 F.3d 971, 977 (9th Cir. 1999).  Only if a petitioner asserts that the admission of evidence by the state court violated his due process rights is the claim cognizable on federal habeas review, and then only if the evidence rendered the trial "fundamentally unfair." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  The admission of inculpatory evidence violated due process only if no permissible inferences existed for the jury to draw from the

---

[2]  Even though the court of appeal did not explicitly refer to the Due Process Clause in denying Petitioner's evidentiary claim, its analysis tracked the standard applicable under federal law by concluding that the invoice was admissible to show his consciousness of guilt.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 897 (9th Cir. 1996) (holding that admission of prior-bad-acts evidence to show consciousness of guilt did not violate Due Process Clause).  The court of appeal therefore necessarily adjudicated that federal claim.  See Ramirez v. McDonald, No. CV 11-02068-JST (SS), 2011 WL 7111902, at *7 (C.D. Cal. Dec. 22, 2011) (concluding that state court necessarily adjudicated federal nature of instructional-error claim even though court cited only state law because "applicable state-law standard imposed the same limit on trial court discretion as the applicable legal standard under the federal Constitution"), accepted by 2012 WL 263032 (C.D. Cal. Jan. 26, 2012).

12

1  evidence, which was so inflammatory that it necessarily prevented
2  a fair trial.  <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103 (9th Cir.
3  1998); <u>Hovey v. Ayers</u>, 458 F.3d 892, 923 (9th Cir. 2006).  The
4  Supreme Court has made "very few rulings regarding the admission
5  of evidence as a violation of due process"; specifically, it has
6  never "made a clear ruling that admission of irrelevant or
7  overtly prejudicial evidence constitutes a due process violation
8  sufficient to warrant issuance of the writ."  <u>Holley</u>, 568 F.3d at
9  1101.

10      The court of appeal's denial of this subclaim was not
11  objectively unreasonable.  Even though Petitioner did not fully
12  limn the alleged due process violation in the Petition, to the
13  extent he claims that the invoice was irrelevant, prejudicial, or
14  lacked foundation, absent clearly established federal law
15  recognizing that the admission of such evidence violates due
16  process, the court of appeal could not have been unreasonable
17  under AEDPA.  <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26, 128
18  S. Ct. 743, 746-47, 169 L. Ed. 2d 583 (2008) (holding that state
19  court could not have unreasonably applied federal law if no clear
20  Supreme Court precedent existed); <u>Holley</u>, 568 F.3d at 1101; <u>Baker</u>
21  <u>v. Evans</u>, No. 2:07-cv-00188 JCW, 2010 WL 4722034, at *25 (E.D.
22  Cal. Nov. 12, 2010) (rejecting evidentiary claim challenging lack
23  of foundation in part because state court denial did not
24  contradict controlling Supreme Court precedent).  In any event,
25  the admission of the invoice did not render Petitioner's trial
26  fundamentally unfair because it was relevant to show his
27  consciousness of guilt, in that other evidence suggested he had
28  created and then given the fake invoice to his attorney,

1   presumably to exonerate himself and corroborate his explanation

2   that he had received the check for his labor.[3]   Further, the

3   prosecutor laid a foundation for the invoice because Bowers

4   testified that defense counsel had given it to her in the hallway

5   after the preliminary hearing, and other evidence demonstrated

6   that defense counsel had gotten it from Petitioner.   (Lodgment

7   11, 2 Rep.'s Tr. at 904-08, 912.)

8        Finally, even if erroneous, the admission of the invoice did

9   not have a substantial and injurious effect in determining the

10  verdicts.   See Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.

11  Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993); Merolillo v. Yates, 663

12  F.3d 444, 455 (9th Cir. 2011) (applying Brecht to review state

13  court's harmlessness analysis).   As the court of appeal found,

14  the evidence of Petitioner's guilt was "abundant."   (Lodgment 4

15  at 5.)   Petitioner (1) attempted to cash a fake check printed

16  from a home computer (Lodgment 11, 2 Rep.'s Tr. at 673-76, 684-

17  89, 918-19); (2) appeared "fidgety" and "nervous" at the bank

18  (id. at 690); (3) left abruptly the first time, without the check

19  and his California identification card, when bank personnel

20  decided to verify the check (id. at 679, 691-92; and (4) left the

21  second time without protest, and without his wallet, when he was

22

23

24  [3]      Even though the court of appeal merely presumed that
    Petitioner had given the fake invoice to his attorney (Lodgment 4
25  at 5 ("A reasonable inference can be drawn that [Petitioner]
    supplied the invoice to his attorney, who passed it on to
26  Prosecutor Bowers.")), Petitioner conceded that fact in his state
    habeas petition, to which he attached defense counsel's declaration
27  stating that Petitioner said he prepared the invoice himself and
    insisted that she deliver it to the prosecutor to "clear up the
28  whole misunderstanding" (Lodgment 9, Ex. A).

                                  14

1  told that he could not have those items back (<u>id.</u> at 692-93,

2  696).  Accordingly, habeas relief is not warranted on this

3  subclaim.

4      C.  <u>Confrontation Clause</u>

5      The court of appeal apparently did not address Petitioner's

6  Confrontation Clause subclaim even though he raised it in his

7  opening brief.  (<u>See</u> Lodgment 1 at 19 ("The alleged invoice was .

8  . . . not only inadmissible as a matter of statutory law, but its

9  admission . . . violated [Petitioner]'s right to confrontation of

10  witnesses" (citing <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.

11  Ct. 1354, 158 L. Ed. 2d 177 (2004))).)  The Court therefore

12  reviews this claim de novo.

13      The Confrontation Clause of the Sixth Amendment affords a

14  criminal defendant the right to cross-examine witnesses against

15  him.  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678, 106 S. Ct.

16  1431, 1435, 89 L. Ed. 2d 674 (1986).  In <u>Crawford</u>, the Supreme

17  Court held that the Confrontation Clause bars "admission of

18  testimonial statements of a witness who did not appear at trial

19  unless he was unavailable to testify, and the defendant had had a

20  prior opportunity for cross-examination."  541 U.S. at 53-54.

21  Conversely, the Confrontation Clause does not bar nontestimonial

22  hearsay statements.  <u>Id.</u> at 68.  It also does not bar party

23  admissions.  <u>United States v. Crowe</u>, 563 F.3d 969, 976 n.12 (9th

24  Cir. 2009) (holding defendant's incriminating out-of-court

25  statements admissible and noting that they did not "raise hearsay

26  or Confrontation Clause concerns").

27      Petitioner's Confrontation Clause subclaim fails.  As

28  Petitioner's lawyer acknowledged, Petitioner had created and then

15

1  given the fake invoice to her to turn over to the prosecutor to
2  cover up his crime.  (See Lodgment 9, Ex. A.)  Thus, admission of
3  the invoice did not implicate Crawford because it constituted an
4  admission by a party opponent.  See Crowe, 563 F.3d at 976 n.12;
5  United States v. Spencer, 592 F.3d 866, 878-79 (8th Cir. 2010)
6  (holding that tape recordings of defendant's incriminating
7  statements did not violate Crawford because statements were
8  admissions by party opponent); United States v. Tolliver, 454
9  F.3d 660, 665 (7th Cir. 2006) (same).[4]  Accordingly, habeas
10 relief is not warranted on this subclaim.

11 **II.  Habeas relief is not warranted on Petitioner's claim that**
12 **the trial court unconstitutionally denied his motion to**
13 **reopen testimony**

14 Petitioner argues that the trial court unconstitutionally
15 denied his motion to reopen the proceedings at the end of trial
16 to allow him to testify.  (Pet. at 5.)

17 A.  Background

18 The Court has independently verified and accordingly adopts
19 the court of appeal's factual summary regarding this claim:

20 At the close of the prosecution's case, the court
21 asked whether [Petitioner] was going to testify.  Counsel
22 replied, "He is not going to take the stand, your Honor,"
23 and rested because there were no other witnesses.[5]  The

24
25 [4]  Even assuming the invoice was legitimate, its admission
   did not violate the Confrontation Clause because it was a
26 nontestimonial business record.  See Crawford, 541 U.S. at 54-56
   (noting that business records "by their nature" not testimonial).
27
28 [5]  Specifically, the following colloquy occurred outside the
   presence of the jury after the prosecution rested:

court reminded the jury that the defense has no

_____

The Court:        Ms. Corona [defense counsel], how many
                  witnesses are you going to call?

Ms. Corona:       None.

The Court:        Okay.  Mr. Barnes is or is not going to
                  take the stand?

Ms. Corona:       He is not going to take the stand, your
                  honor.

The Court:        Okay.  So you are going to essentially
                  rest; is that right?

Ms. Corona:       That's correct.

The Court:        Okay.  I think maybe then the best thing
                  to do would be to take a break for the
                  rest of the afternoon.

(Lodgment 11, 2 Rep.'s Tr. at 957.)

     The court then briefly recessed and proceeded to question
defense counsel in open court:

The Court:        Ladies and gentlemen, the People have
                  concluded their case.  So you have heard
                  all of the evidence that you are going to
                  hear from them.  So we are going to – let
                  me ask Ms. Corona.

                  Ms. Corona, do you have any witnesses to
                  call?

Ms. Corona:       No, your honor, the defense rests.

The Court:        All right.  Ladies and gentlemen, the
                  defendant rests as well.  They are not
                  going to present any evidence.

(Id. at 958.)  The court subsequently informed the jury that when
they reconvened the next day, the case would be finished and they
would receive jury instructions, followed by closing arguments.
(Id. at 959.)

17

obligation to present witnesses because the burden of proof is on the prosecution.  The court excused the jury, and spent the afternoon finalizing jury instructions.[6]

The following day, as the court was preparing to read the jury instructions, defense counsel received a note from [Petitioner], indicating that "he has changed his mind about testifying and he feels that it's something that he needs to do, and he wants to do."  The court denied [Petitioner]'s request to reopen, stating, "Both sides have rested.  The People would be prejudiced.  They would not have the opportunity or it would be difficult for them to call any rebuttal witnesses or find any rebuttal witnesses at this point in time."

(Lodgment 4 at 6.)

The court of appeal rejected Petitioner's claim:

The parties agree that the trial court has substantial discretion whether to reopen a case for the introduction of additional evidence.  On review, we consider four factors: (1) the stage of the proceedings; (2) the defendant's diligence; (3) the risk that the jury would give the new evidence "undue emphasis"; and (4) the significance of the new evidence.  (People v. Jones (2003) 30 Cal. 4th 1084, 1110.)  [Petitioner]'s request to reopen — after both sides rested and the jury was

_____

[6]    After excusing the jury, the court asked Petitioner whether he wished to be present for the rest of the afternoon while the court reviewed jury instructions with counsel, and he said no. (Lodgment 11, 2 Rep.'s Tr. at 964-65.)  Accordingly, the court excused him.  (Id. at 965.)

1   about to be instructed — would have prolonged the trial,
2   and required the prosecution to locate rebuttal
3   witnesses. (People v. Earley (2004) 122 Cal. App. 4th
4   542, 546.) [Petitioner] made no offer of proof in the
5   trial court about the significance of his new evidence.
6   Indeed, he concedes in his brief that "the significance
7   of [Petitioner]'s testimony to the case if permitted to
8   reopen was unknown." Under the circumstances, the trial
9   court did not abuse its discretion in refusing to reopen
10  because the request "came too late in the proceedings and
11  did not propose to offer any new, particularly
12  significant, evidence." (Earley, at p. 546.)
13  (Id. at 6-7 (some alterations, citations, and internal quotation
14  marks omitted).)
15      B.   Applicable Law
16      A criminal defendant has a right to testify on his own
17  behalf. Rock v. Arkansas, 483 U.S. 44, 51-52, 107 S. Ct. 2704,
18  2708-09, 97 L. Ed. 2d 37 (1987); see also Jones v. Barnes, 463
19  U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L. Ed. 2d 987 (1983)
20  (holding that counsel cannot waive defendant's right to testify).
21  The defendant may, however, waive that right explicitly or
22  implicitly. Cf. United States v. Pino-Noriega, 189 F.3d 1089,
23  1094 (9th Cir. 1999) (holding that waiver of right to testify
24  need not be explicit and instead may be inferred). An implicit
25  waiver "may be inferred from the defendant's conduct and is
26  presumed from the defendant's failure to testify or notify the
27  court of his desire to do so." United States v. Joelson, 7 F.3d
28  174, 177 (9th Cir. 1993) (reasoning that defendant who wants to

1  reject counsel's advice and testify may do so by insisting on
2  testifying, speaking to court, or discharging counsel); see
3  Pino-Noriega, 189 F.3d at 1095 (holding defendant waived right to
4  testify by remaining "silent in the face of his attorney's
5  decision not to call him as a witness").  "The trial court has no
6  duty to advise the defendant of his right to testify, nor is the
7  court required to ensure that an on-the-record waiver has
8  occurred."  Joelson, 7 F.3d at 177 (internal quotation marks
9  omitted).

10      Furthermore, while the right to testify in one's own defense
11  is fundamental, that right "may, in appropriate cases, bow to
12  accommodate other legitimate interests in the criminal trial
13  process," as long as such restrictions on the right to testify
14  are not "arbitrary or disproportionate to the purposes they are
15  designed to serve."  Rock, 483 U.S. at 55-56; see, e.g.,
16  Pino-Noriega, 189 F.3d at 1096 (defendant's request to reopen
17  evidence and testify after jury had reached verdict but before
18  verdict was read was untimely); Neuman v. Rivers, 125 F.3d 315,
19  318-19 (6th Cir. 1997) (defendant not deprived of right to
20  testify but rather waived it by waiting to make request to reopen
21  evidence and testify on his own behalf until just before jury
22  instructions); United States v. Jones, 880 F.2d 55, 59 (8th Cir.
23  1989) ("The rule generally limiting testimony to the
24  evidence-taking stage of trial does not unconstitutionally
25  infringe upon a defendant's right to testify.").

26      C.  Analysis

27      The court of appeal's finding that Petitioner's motion to
28  reopen was untimely was not objectively unreasonable.  Petitioner

changed his mind about testifying and made his request after both sides had rested, the court had finalized jury instructions, and the court had informed the jury that all that was left to do in the trial were jury instructions and closing argument and that the proceedings would be "finish[ed]" the next day. (Lodgment 11, 2 Rep.'s Tr. at 957-59; 3 Rep.'s Tr. at 1202-05.) Before notifying the jury that the taking of evidence in the case had concluded, the trial court twice inquired through counsel whether Petitioner wished to testify, and he remained silent as counsel responded in the negative, even though he could have advised the court of his desire to testify or that he disagreed with counsel's representations. (Lodgment 11, 2 Rep.'s Tr. at 957-58.)  Indeed, Petitioner subsequently informed the court that he wished to testify precisely because he had changed his mind. (Lodgment 11, 3 Rep.'s Tr. at 1202-05.)  Therefore, it was not "arbitrary or disproportionate" for the trial court to deny his motion to reopen raised at such a late stage of the proceedings. See Rock, 483 U.S. at 55-56; Sillas v. Virga, NO. CV 08-00459 JHN (SS), 2010 U.S. Dist. LEXIS 118075, at *65 (C.D. Cal. Sept. 13) (finding state court denial of petitioner's motion to reopen after close of evidence not objectively unreasonable because requiring assertion of that right before close of evidence "promotes order and fairness in trials and is neither arbitrary or disproportionate to that purpose" (internal quotation marks omitted)), accepted by 2010 U.S. Dist. LEXIS 117701 (C.D. Cal. Nov. 4, 2010).  Accordingly, this claim does not warrant habeas relief.

**III.  <u>Habeas relief is not warranted on Petitioner's</u>**
     **<u>prosecutorial-misconduct claim</u>**

Petitioner argues that the prosecutor violated <u>Griffin</u> by improperly commenting in closing argument on Petitioner's decision not to testify.  (Pet. at 5-6.)

     A.   <u>Background</u>

The Court has independently verified and accordingly adopts the court of appeal's factual summary regarding Petitioner's prosecutorial-misconduct claim:

> During closing argument, the prosecutor discussed [Petitioner]'s creation of a false invoice following his arrest, referring to it as "this lie."  The prosecutor reasoned that the false invoice was [Petitioner]'s postarrest attempt to wriggle out of criminal charges by pretending that he legitimately earned the check with his labors. . . .[7]

---

[7]    In particular, the prosecutor argued:

. . . . [A]fter he's arrested, he makes up this lie with the invoice, right?  He makes up a lie.

Only guilty people do this.  Only people who knew the check was fake do this.

Because if the truth is something that will help you out, the truth is something that you will show that you didn't know what was going on, you would tell the truth.

There's only one person who has to be afraid of the truth, and that's someone who is guilty.  Innocent people don't have to do this.  Because they can tell the truth. He can't.  He can't tell the truth because if he told the truth, he would get — he knows he would get immediately

(Lodgment 4 at 7-8 (footnote and some alterations omitted).)

The court then rejected this claim on the merits after finding that Petitioner had waived it:

>       .   .   .   .   The prosecutor did not address
> [Petitioner]'s failure to testify.  In context, the
> closing argument highlighted [Petitioner]'s failure to
> "tell the truth" before trial to the police and
> prosecution, _i.e._, that he knew the check was fraudulent.
> Telling the police the truth about the check would get
> him "immediately convicted."  Instead, [Petitioner] —
> fearing the truth — concocted a flimsy story about the
> provenance of the check.  If [Petitioner] were innocent,
> he would not have made up "the lie and the fake
> evidence."
>
> The prosecutor alluded to the phony exculpatory
> evidence because it showed [Petitioner]'s consciousness
> of guilt.  (See People v. Cunningham (2001) 25 Cal. 4th
> 926, 1001 [prosecutor may comment on evidence showing the
> defendant's consciousness of guilt].)  The argument was

---

convicted.  And he created this fake evidence, you know.
It's the same thing, basically, the lie and fake
evidence.

            .   .   .   .

    And I want to sort of contrast that for a second
with what an innocent person would do.  Because think
about it.  Think about if someone who really thought this
check was good, had really painted some bedrooms and had
been given this check for payment, and went to [the bank]
to cash it, what would they do? . . .

(Lodgment 11, 2 Rep.'s Tr. at 1247-48.)

1    a "comment on the state of the evidence." (<u>People v.</u>

2    <u>Cornwell</u>, <u>supra</u>, 37 Cal. 4th at p. 90[.])   It does not

3    refer, in any way, to [Petitioner]'s silence at trial,

4    and the jury could not reasonably have construed it as a

5    reference to [Petitioner]'s failure to testify.

6    (<u>Id.</u> at 8 (some internal quotation marks omitted).)

7         B.   <u>Applicable Law</u>

8         Prosecutorial misconduct warrants habeas relief only if it

9    "so infected the trial with unfairness as to make the resulting

10   conviction a denial of due process." <u>Darden v. Wainwright</u>, 477

11   U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986);

12   <u>Renderos v. Ryan</u>, 469 F.3d 788, 799 (9th Cir. 2006) (same).   The

13   Ninth Circuit has interpreted <u>Darden</u> as requiring a two-step

14   inquiry: whether the prosecutor's actions were improper and, if

15   so, whether they "infected" the trial and rendered it

16   "fundamentally unfair." <u>Drayden v. White</u>, 232 F.3d 704, 713 (9th

17   Cir. 2000).   "[T]he touchstone of due process analysis in cases

18   of alleged prosecutorial misconduct is the fairness of the trial,

19   not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455

20   U.S. 209, 219, 102 S. Ct. 940, 947, 71 L. Ed. 2d 78 (1982).

21   Relief is limited to cases in which the petitioner can establish

22   that the prosecutorial misconduct resulted in actual prejudice

23   under <u>Brecht</u>, 507 U.S. at 637-38, requiring the alleged error to

24   have had a substantial and injurious effect or influence on the

25   verdict.   <u>Shaw v. Terhune</u>, 380 F.3d 473, 478 (9th Cir. 2004).

26        The Fifth Amendment precludes the prosecutor from commenting

27   on a defendant's failure to testify. <u>Griffin</u>, 380 U.S. at 615.

28   A comment is impermissible "if it is manifestly intended to call

24

attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Rhoades v. Henry, 598 F.3d 495, 510 (9th Cir. 2010), cert. denied, 132 S. Ct. 401 (2011).

C.   Analysis

As a preliminary matter, Respondent asserts that Petitioner's prosecutorial-misconduct claim is procedurally defaulted because the court of appeal rejected it in part based on Petitioner's failure to comply with California's contemporaneous-objection rule.  (Answer at 1, 22-25.) Petitioner has failed to dispute Respondent's contentions because he did not file a reply to the Answer.  Because it is easier to adjudicate this claim on the merits, however, the Court has done so in the interest of judicial economy.  See Lambrix v. Singletary, 520 U.S. 518, 524-25, 117 S. Ct. 1517, 1523, 137 L. Ed. 2d 771 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (noting that federal courts "are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar").  The Court applies the deferential AEDPA standard in reviewing this claim because the court of appeal reached its merits in the alternative.  (Lodgment 4 at 8); see James v. Ryan, 679 F.3d 780, 802-03 (9th Cir. 2012) (holding that when state court primarily rejects habeas claim on procedural ground but alternatively reaches and resolves merits of claim, denial of it is entitled to AEDPA deference).

The court of appeal was not objectively unreasonable in denying this claim.  Taken in context, instead of expressly targeting Petitioner's failure to testify, the prosecutor's remarks focused on Petitioner's pretrial attempt to falsify evidence, in which he created and then gave a fake invoice to his attorney; the remarks therefore were permissible to show Petitioner's consciousness of guilt and were properly grounded in the evidence.  Likewise, the prosecutor's statement that Petitioner would have been "immediately convicted" if he had "told the truth" referred to his decision to lie before trial, not his failure to testify during it.  Therefore, because the statements were not of "such a character that the jury would naturally and necessarily take [them] to be [comments] on the failure" of Petitioner to testify, there was no <u>Griffin</u> error.  <u>See</u> <u>Rhoades</u>, 598 F.3d at 510; <u>Winn v. Lamarque</u>, No. 2:03-cv-2347 JAM KJN P, 2010 WL 2303304, at *19-20 (E.D. Cal. June 7, 2010) (denying <u>Griffin</u> challenge because prosecutor's statement referred to petitioner's lie to police, which prosecutor claimed had not been subjected to cross-examination, and not his failure to testify at trial).

**IV.   <u>Habeas relief is not warranted on Petitioner's ineffective-assistance-of-counsel claim</u>**

Petitioner argues that his trial counsel was constitutionally ineffective for failing to object to the alleged <u>Griffin</u> error or authenticate the fake invoice given to her by Petitioner, which was subsequently used at trial to inculpate

1  him.[8]  (Pet. at 6.)

2      Under <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.

3  Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), a petitioner claiming

4  ineffective assistance of counsel must show that counsel's

5  performance was deficient and that the deficient performance

6  prejudiced his defense.  "Deficient performance" means

7  unreasonable representation falling below professional norms

8  prevailing at the time of trial.  <u>Id.</u> at 688-89.  To show

9  deficient performance, the petitioner must overcome a "strong

10 presumption" that his lawyer "rendered adequate assistance and

11 made all significant decisions in the exercise of reasonable

12 professional judgment."  <u>Id.</u> at 690.  Further, the petitioner

13 "must identify the acts or omissions of counsel that are alleged

14 not to have been the result of reasonable professional judgment."

15 <u>Id.</u>  The initial court considering the claim must then "determine

16 whether, in light of all the circumstances, the identified acts

17 or omissions were outside the wide range of professionally

18 competent assistance."  <u>Id.</u>

19     The Supreme Court has recognized that "it is all too easy

20 for a court, examining counsel's defense after it has proved

21 unsuccessful, to conclude that a particular act or omission of

22 counsel was unreasonable."  <u>Id.</u> at 689.  Accordingly, to overturn

23 the strong presumption of adequate assistance, the petitioner

24 must demonstrate that the challenged action could not reasonably

25 be considered sound trial strategy under the circumstances of the

27

28     [8]    Petitioner adopts his ineffective-assistance-of-counsel
arguments from his state-court briefs.  (Pet. at 6.)

27

case. Id.

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, the petitioner must affirmatively

> show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694; see also Richter, 131 S. Ct. at 791 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."). A court deciding an ineffective-assistance-of-counsel claim need not address both components of the inquiry if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

In Richter, the Supreme Court reiterated that AEDPA requires an additional level of deference to a state-court decision rejecting an ineffective-assistance-of-counsel claim:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.

131 S. Ct. at 785. The Supreme Court further explained,

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the

28

more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Id.</u> at 788 (citations omitted).

A.   *Griffin* Error

The court of appeal rejected this subclaim on direct appeal:

[Petitioner] asserts that he received ineffective assistance of counsel, who failed to preserve claims by asserting timely objections in the trial court.  It is true that defense counsel failed to object to the prosecutor's argument.  (<u>See</u> <u>People v. Turner</u> (2004) 34 Cal. 4th 406, 420 [counsel's failure to preserve a claim by objecting in the trial court may give rise to a claim for ineffective assistance of counsel].)  However, the explanation for this may be tactical: counsel may have decided not to object because it would highlight the issue.  (<u>People v. Stewart</u> (2004) 33 Cal. 4th 425, 509.)  In any event, the challenged argument did not refer to [Petitioner]'s decision not to testify at trial and did not constitute prosecutorial misconduct, as discussed in

29

1    section 3 of this opinion. . . .

2  (Lodgment 4 at 8.)

3       The court of appeal's denial of this subclaim was not

4  objectively unreasonable because as discussed in Section III, the

5  prosecutor did not violate <u>Griffin</u> in his closing argument, and

6  defense counsel therefore had no reason to object.  <u>See Juan H.</u>

7  <u>v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005) (finding counsel

8  not deficient for failing to raise meritless objection).

9  Further, as the court of appeal noted, counsel could have

10 intentionally chosen not to object to avoid highlighting an

11 incriminating fact, which the invoice certainly was.  <u>See Werts</u>

12 <u>v. Vaughn</u>, 228 F.3d 178, 204-05 (3d Cir. 2000) (holding state

13 court's denial of ineffective-assistance-of-counsel claim not

14 unreasonable because counsel's failure to object to prosecutor's

15 opening and closing remarks was based on decision not to

16 "highlight" or "draw attention" to certain issues).  Counsel's

17 informed tactical decision in this regard would be "virtually

18 unchallengeable."  <u>See</u> <u>Strickland</u>, 466 U.S. at 690.  Accordingly,

19 Petitioner is not entitled to relief on this subclaim.

20       B.   <u>Failure to Authenticate</u>

21       The court of appeal rejected this subclaim on habeas review,

22 finding that "Petitioner has failed to meet his burden of showing

23 that but for counsel's alleged errors, the outcome of his trial

24 would have been different." (Lodgment 8.)  The court of appeal's

25 denial of this subclaim was not objectively unreasonable.

26 Petitioner has failed to show prejudice because as explained in

27 Section I, even without admission of the invoice, abundant

28 evidence demonstrated his guilt.  Accordingly, this subclaim does

1    not warrant habeas relief.

2                                **ORDER**

3         IT THEREFORE IS ORDERED that Judgment be entered denying the

4    Petition and dismissing this action with prejudice.

5

6    DATED: September 10, 2012    _____

7                                JEAN ROSENBLUTH
                                 U.S. MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28